In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1526

Central Laborers' Pension, Welfare
and Annuity Funds,

Plaintiffs-Appellees,

v.

Ted Griffee, d/b/a Midwest Landscape
Design and Construction,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 6702--James B. Zagel, Judge.

Argued September 27, 1999--Decided December 28, 1999

Before Posner, Chief Judge, and Ripple and Rovner,
Circuit Judges.

Posner, Chief Judge.   This appeal presents issues
concerning service of process. The plaintiffs, a
trio of affiliated multiemployer ERISA plans (a
defined-benefit pension plan, a defined-
contribution pension plan, and a welfare plan)
for construction employees in Illinois, brought
suit against a contractor named Griffee to
recover some $29,000 in delinquent contributions,
which if recovered were to be allocated among the
three plans. The complaint was filed in October
of 1996. In September of the following year,
having failed to serve Griffee, the funds asked
the district judge to dismiss their suit without
prejudice, and he did so. Why they wanted to
dismiss their suit is unclear; they didn't intend
to abandon their efforts to collect the
delinquent contributions, and they could have
asked the judge for additional time within which
to serve the defendants. Fed. R. Civ. P. 4(m);
Troxell v. Fedders of North America, Inc., 160
F.3d 381 (7th Cir. 1998). They told us at
argument that they felt that the district judge
would prefer not to have an aging, inactive case
on his docket.

   By a curious coincidence, the very day after the
suit was dismissed the summons and complaint in

the now defunct suit were served upon Mr. Griffee by an official of one of the local unions whose members (including the official) are participants in the plans. A month later the plans moved the district court to reinstate their suit nunc pro tunc, backdating the reinstatement to the day on which the suit had been dismissed. And a month after that they filed a motion for entry of a default judgment. When Griffee, to whom they mailed a copy of the motion, did not respond to it, the judge granted the motion and entered judgment in the amount sought. Some months later, after the plaintiffs began efforts to collect the judgment, Griffee moved the court to vacate the default judgment as void, Fed. R. Civ. P. 60(b)(4); Swaim v. Moltan Co., 73 F.3d 711, 717-18 (7th Cir. 1996), on the ground that service had been improper, not only because the suit had been dismissed before service was made but also because service had been made by a person who had a financial stake in the litigation.

A judgment is void if the court issuing it does not have jurisdiction over the defendant, e.g., Hanson v. Denckla, 357 U.S. 235, 249-50 (1958); In re Crivello, 134 F.3d 831, 838 (7th Cir. 1998); Koehler v. Dodwell, 152 F.3d 304, 306-07 (4th Cir. 1998), and it does not if the defendant is not served, e.g., Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 940 (5th Cir. 1999); LSJ Investment Co. v. O.L.D., Inc., 167 F.3d 320, 324 (6th Cir. 1999), unless he waives service or makes an appearance in the case without reserving an objection to jurisdiction. Fed. R. Civ. P. 12(h); Ruhrgas AG v. Marathon Oil Co., 119 S. Ct. 1563, 1570 (1999); Koehler v. Dodwell, supra, 152 F.3d at 306. When Griffee was served in the initial lawsuit, that suit had been dismissed. A new suit (or reinstated old suit-- the difference, of no moment here because there is no statute of limitations issue, is only whether the plaintiffs had to pay a second filing fee, Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc., 960 F.2d 1339, 1346 (7th Cir. 1992)) was filed, but was never served, and so the court never acquired jurisdiction over the defendant. Hence the Rule 60(b)(4) motion should have been granted.

It is no answer that by granting the order of reinstatement nunc pro tunc the district judge brought the original suit back to life as of the day that Griffee was served, which was the day after that suit had been dismissed in order to keep the judge's docket pristine. As we have reminded the district courts time and again, the only proper office of a nunc pro tunc order is to correct a mistake in the records; it cannot be used to rewrite history. E.g., Transamerica Ins. Co. v. South, 975 F.2d 321, 325-26 (7th Cir. 1992); United States v. Daniels, 902 F.2d 1238,

1240 (7th Cir. 1990); King v. Ionization Int'l, Inc., 825 F.2d 1180, 1188 (7th Cir. 1987). If the suit had been dismissed on September 12 (the day after service), but the court's docket sheet had erroneously recorded the date of dismissal as September 10, then an order correcting the record as of the date of entry would have been proper. But there was no mistake to be corrected. The original suit really was dismissed on September 10, the day before service.

We are not being formalists. Griffee was not represented by counsel, and if having been served on September 11 he had called the clerk of the district court to find out what this was all about, he would have been told that it was about nothing, because the suit had been dismissed. There is no indication, incidentally, that he had been trying to evade service; the plaintiffs' lawyer could not explain to us why they had taken so long to serve him.

The district judge brushed aside Griffee's objection to the server merely by observing that Fed. R. Civ. P. 4(c)(2) says that "service may be effected by any person who is not a party and who is at least 18 years of age" and the union official who served Griffee was not a party to the litigation. The observation is correct but misses the point. When a suit is brought by a fiduciary, his beneficiary, while not a named party, is the real party in interest, e.g., Riggs Nat'l Bank v. Zimmer, 355 A.2d 709, 713-14 (Del. Ch. 1976), and it would be curious, to say the least, to have service performed by a real party in interest. It would be in the interest of that party to flush the summons and complaint down the toilet, execute an affidavit of service, and move for a default judgment.

In the case of a pension or welfare fund--a trust, but one with thousands of participants and beneficiaries--the financial stake of a participant will often be too attenuated to present a serious risk of a real conflict of interest. One of the plans is a defined-benefit plan, which means that the interest of Mr. Downs (the official who served Griffee) is fixed and does not depend on the assets of the plan, Hughes Aircraft Co. v. Jacobson, 119 S. Ct. 755, 761 (1999), and another is a defined-contribution plan to which the money sought from Griffee is irrelevant because he is not Downs's employer. But in pointing out these things the plaintiffs ignore the facts that there is a third plan, a welfare plan that may for all we know be unfunded; that defined-benefit plans can go broke and when they do the insurance provided by the Pension Benefit Guaranty Corporation is limited, Commonwealth Edison Co. v. Vega, 174 F.3d 870,

874 (7th Cir. 1999); Jay Conison, Employee Benefit Plans in a Nutshell 430 (2d ed. 1998); and that in the event the plans (or one or two of them) are liquidated, their assets may be distributed in whole or part to participants such as Mr. Downs.

We need not pursue the issue of service by a trust beneficiary further. The question whether "party" in Rule 4(c)(2) might include a real party in interest that is not a named party is interesting, but also esoteric (we cannot find any cases discussing it), as most trustees know better than to use their beneficiaries as their process servers; and it is not squarely posed here, first because the default judgment must be set aside anyway and second because Griffee does not deny that he was served. If receipt of service is conceded, we suppose it would not matter if the server were a two-month old orangutan. All that is conceded, however, recurring to the first point, is the receipt of service in a defunct case, and that is not enough to confer jurisdiction over a case later filed or revived.

The judgment is reversed with instructions to vacate the default judgment.

Reversed.